Seney, J.
In the case of Carter v. Lillie et al., the material averments ■contained in the amended petition are: that the defendants with others formed a combination under the name of The Crawford, Henry and Williams County Bohemian Oates Association, for the purpose of selling Bohemian oats at a fictitious price and in a fraudulent manner; that said defendants by their agents induced plaintiff to purchase and receive fifty bushels of said oats, for which he paid them $500.00.
As a part of said transaction the defendants represented : that they were introducing a new and greatly superior variety of oats that would yield much more per acre than common 'oats, and would sell in the market for from one to ten dollars per bushel; that said oats being hull-less were especially desirable for making oat-meal, and as such would bring from one to two dollars per bushel; that said oats were very scarce, difficult to procure, and they could only furnish seed to fifteen persons in the township; that their company was composed of good and responsible men, and was organized for the express purpose of improving the production of cereals; that the defendants promised they would sell for the plaintiff next season twice as many bushels of said oats as plaintiff would then buy, at the same price; that the defendants delivered to plaintiff a pretended bond of said association that purported to bind said company to sell for said plaintiff one hundred bushels of said oats; that he (the plaintiff) entered into said transaction in good faith — ignorant of the variety, quality and *365 value of said oats; ignorant of the plans and methods of the-said defendants in disposing of said oats; ignorant of the character of the persons composing said company, and of the-character and validity of said pretended bond — and being thus-ignorant, relied upon and believed all the statements of said defendants in relation to said transaction.
The said oats were not new; that they would not produce more per acre than common oats; that they were not suitable for oat-meal, and in fact were worthless; that there was no-scarcity of said oats for seed, or any limitation as to their sale;; that said company was not composed of good men, neither was< said bond a valid instrument, but on the contrary said bond was invalid and void; that the promise to sell one hundred bushels of said oats was merely a fraudulent pretense on the part of said defendants, made to induce plaintiff to buy, and' with no purpose or intention on the part of the defendants to perform, and said promise in fact was not complied with — all of which was well known to said defendants; that all of these-representations were a part and a parcel of a cunningly de-. vised scheme, concocted by said defendants to cheat and defraud the unwary, and said scheme was so used bj' said defendants in the said transaction; that when he discovered' the fraudulent character of said transaction and that he could • not sell said oats or allow it to be sold by defendants without the perpetration of a wrong upon parties purchasing, he did*not sell or offer for sale any portion of said oats, or allow it to be sold by said defendants.
Prays judgment.
In the case of Slater v. Milum ét al., the averments contained in the amended petition are in substance the same as in the-case of Carter v. Lillie.
In the case of Caldwell v. Miller et al., payment for the oats-sold to Caldwell was made by him executing and delivering his note to the defendant Miller, and by Miller transferred to-the other defendants, with full knowledge on the part of each defendant of the entire transaction — which is averred in an-amended petition, similar to the facts in the Carter case.
The petition in this case was filed March 19,1886, and is entirely different from the facts alleged in the amended petition.. *366 The original petition seeks a cancellation of the note, on the failure of the defendant Miller to perform the contract— while the amended petition seeks a cancellation of the note or rescission of .the contract for fraud.
The amended petition was filed January 8, 1887 j the note sought to be cancelled was due April 6,1886.
To each of these amended petitions a general demurrer was interposed in the court below, and sustained. The action of the court in sustaining these demurrers is prosecuted in this court by a petition in error. This is the only question presented to this court.
Do the facts alleged in the amended petitions constitute a good and legal cause of action?
Strip the pleadings of all the claims of fraud or false representations, and you have left: a contract entered into between the plaintiff and defendants, whereby the plaintiff agrees to pay the defendants $500.00 in money for fifty bushels of Bohemian oats, and whereby the defendants agree to sell for plaintiff the next year one hundred bushels (raised from sowing said oats) for $1,000.00.
This contract is entire — the consideration moving from the plaintiff to the defendants is the payment of $500.00 — the consideration moving from the defendants to the plaintiff, is the delivery of fifty bushels of Bohemian oats, and the sale of one hundred bushels of Bohemian oats by the defendants for the plaintiff — the amended petition avers performance on the part of the plaintiff, and failure to perform in part on behalf of the defendants, viz.: the sale of the one hundred bushels. The plaintiff has two remedies : first, to recover for the failure to perform, and second to rescind the contract and recover back the money paid. The plaintiff seeks in this action to rescind upon the ground of fraud.
It is a well settled principle of law that false representations, in order to be actionable, must relate to existing or past facts, not to anything in the future. With thié principle in view how stand the false representations made in this case ?
Said oats would yield — not had yielded • that they could only furnish a certain quality, this relates to the future. Said.oats would sell in the market for from $1 to $10 per bushel, and for *367 the purpose of oat-meal would sell from $1 to $2 pe,r bushel— this all relates to a future fact, and as to the value this is merely the expression of an opinion.
Other representations made we will consider in connection with the transaction itself.
The plaintiff says he entered into a contract with these defendants, whose only purpose was to cheat and defraud. True, he says he was ignorant of this purpose. Will the facts he pleads sustain him in this plea of ignorance? He agreed to pay $10 per bushel for oats, and the only representation that was made which in law he could believe and act upon with security was the representation that the oats were good for oat-meal, and would sell in the market for from one dollar to two dollars per bushel. As a part of this contract he further attempted to bind the defendants to sell for him 100 bushels of the same oats at $10 per bushel, when the only information he had was that the oats were only worth $1 to $2 per bushel for the special purpose for which they were adopted, viz.: oat-meal. Was this not in itself sufficient to inform him that these defendants, if they performed their contract, would be compelled to take from him 100 bushels of oats that was worth in the market as represented not to exceed $2 per bushel, and dispose of it for him at $10 per bushel? Could this he done in the nature of things, unless some one was defrauded ? Can he close his eyes to the fact that he was establishing an agency in these defendants to defraud his neighbors? He must have known — the law says he did know — the natural consequences of his own contract. He says that the defendants’ only purpose was to cheat and defraud; that he did not know their scheme ; he claims ignorance ; but he pleads the facts as to how the scheme was worked upon him. i He was advised that to make the scheme successful, others would have to pay five times the represented value of the oats, as he was doing. It was further represented to him that they could only sell to 15 persons in his township; this would be 750 bushels; they were to be sold to his neighbors upon the same terms that he was buying. He knew that this compelled these defendants to re-sell 1500 bushels at $10 per bushel —enormous in its burdens, and yet pleads ignorance. His plea *368 of ignorance in general terms, is inconsistent with the facts he pleads. The facts are all. His conclusions from those facts — ignorance, is nothing.
He pleads that the defendants ^associated themselves together for the purpose to cheat and defraud. This scheme was exposed to him by the contract he made, and he thereby became a part of the same combination. Connecting himself with the defendants for such a purpose, will the law aid him to recover back money paid upon such a contract?
To a person seeking the truth, the prime motive of the plaintiff in making such a contract, was none other than the profits that he expected to realize upon the re-sale of 100 bushels of his oats. This was the sole consideration that prompted him to act. With what force comes the language of Judge Thurman in the case of Goudy, Administrator, v. Gebhart, 1 Ohio St., 262, where he says : “ But it is urged that a sale of property is not per se either illegal, immoral, or against public policy, and that if the intent of the transaction be to defraud creditors, it is only as against them that it is illegal, immoral, etc. I confess I cannot attach much weight to this refinement which dissects a transaction and finds it very upright and laudable for one purpose, and very corrupt and illegal for another. To my apprehension the fraudulent motive is the very gist of the agreement, and taints the whole of it.”
The maxim, “ex turpi causa, non oritur actio,” says Judge Scott, in the case of Hooker v. DePalos et al., 28 Ohio St., 261, “is an old and familiar one, resting on the clearest principles of public policy, and never to be ignored. In accordance with this maxim, nothing is better settled than that in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them whilst they remain executory, either in whole or in part, nor when executed will it aid either party to place himself in statu quo by a rescission, but will in both cases leave the parties where it finds them.”
Again, by the same eminent judge, in the case of Widoe v. Webb. 20 Ohio St., 2, he says : “ It has been said with much force that where parties have woven a web of fraud or wrong, *369 it is no part of the duty of courts of justice to unravel the threads and separate the sound from the unsound.”
So in each of these cases, the plaintiff, as a part of the consideration for the money paid, agreed with the defendants that they should re-sell for him one hundred bushels of oats, the sole- and only tendency of which; if performed, would be to defraud. The fact pleaded that they, the defendants, did not intend to perform, does not avail the plaintiff, without an averment that at the time of the contract he knew they would not perform, and that it was not his intention that they should.
The plaintiffs, having made their beds, the court will let them lie and not disturb them. '
In addition to what has been said, this further can be said in the case of Caldwell v. Miller et al., that the amended petition does not state facts sufficient for equitable relief. It-clearly appears that the plaintiff has an adequate remedy at-law by a defense to the note. ■ Having such remedy, equity will not interfere.
Judgment will be affirmed, with costs.
Burr and Moore concur.